| **Respond to Selected Documents**

**Sort Date Entries: Descending Ascending**

**Display Options:** All Entries ⌄

**04/13/2026**

> **Filing Info Sheet eFiling**
>
> **Filed By:** JACK DUNCAN MCINNES V
>
> **Note to Clerk eFiling**
>
> **Filed By:** JACK DUNCAN MCINNES V
>
> **Pet Filed in Circuit Ct**

Plaintiffs Petition for Damages and Equitable Relief.
> **Filed By:** JACK DUNCAN MCINNES V
> **On Behalf Of:** KRA-ZE, LLC, CARL BROWN, KEVIN CLANG

**EXHIBIT A**

**26SL-CC03081**

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| KRA-ZE, LLC, CARL BROWN, and KEVIN CLANG, ) ) ) | |
| Plaintiffs, ) ) | |
| ) | Cause No. _____ |
| v. ) ) | |
| LUXCO, INC., ) | Division No. \_\_ |
| Serve at: CT Corporation System ) | |
| 5661 Telegraph Rd Ste 4B ) | |
| St. Louis, MO 63129-4275 ) | JURY TRIAL DEMANDED |
| ) | |
| MGPI PROCESSING, INC., f/k/a ) | |
| MGP INGREDIENTS, INC., ) | |
| Serve at: CT Corporation System ) | |
| 5661 Telegraph Rd Ste 4B ) | |
| St. Louis, MO 63129-4275 ) | |
| ) | |
| BOTTLER, INC., ) | |
| Serve at: 5050 Kemper Avenue ) | |
| St. Louis, MO 63139 ) | |
| ) | |
| DONN LUX, ) | |
| Serve at: 9725 Conway Rd ) | |
| St. Louis, MO 63124 ) | |
| ) | |
| PAUL T. LUX, and ) | |
| Serve at: 1545 S Milwaukee Street ) | |
| Denver, CO 80210 ) | |
| ) | |
| DOES 1-99, inclusive, ) | |
| ) | |
| Defendants. | |

**PLAINTIFFS' PETITION FOR DAMAGES AND EQUITABLE RELIEF**

COMES NOW, Plaintiffs Kra-ze, LLC ("Kra-ze"), Carl Brown, and Kevin Clang (collectively, "Plaintiffs"), and for their claims against Defendants Luxco, Inc. ("Luxco"), MGPI Processing, Inc., f/k/a MGP Ingredients, Inc. ("MGP"), Bottler, Inc. ("Bottler"), Donn Lux, Paul T. Lux, and Does 1-99 (collectively, "Defendants"), state and allege as follows:

1

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**INTRODUCTION**

1.      This is a case about fraud, breach of contract, and the deliberate destruction of a small business by the very company that was trusted to supply and support it.

2.      Brown and Clang, the co-founders and managing members of Kra-ze, spent years building Bower Hill Bourbon into an award-winning American whiskey brand. To do so, they needed a production partner, and they found one in Luxco and its chairman, D. Lux.

3.      What followed was a decades-long course of fraudulent conduct and systemic breach. Defendants induced Plaintiffs into a series of interlocking agreements structured to extract maximum value from them while keeping them financially dependent and unable to grow.

4.      Defendants used a fictitious entity — "Bottler" — as their contracting party, a legal fiction that did not exist as a corporation under the laws of Missouri or any other state.

5.      Defendants falsely represented, for eight consecutive years, that they were supplying true Single Barrel and Barrel Strength bourbon whiskeys when they were not.

6.      After acquiring Luxco, Defendants secretly relocated the bourbon's production source from Louisville, Kentucky to Bardstown, Kentucky without informing Plaintiffs — causing them to sell products bearing Alcohol and Tobacco Tax and Trade Bureau ("TTB")-approved labels that were materially inaccurate as to the bourbon's origin and exposing Plaintiffs to federal regulatory liability.

7.      Defendants delegated their non-delegable bottling obligations to a subsidiary, sold that subsidiary to an affiliate, and continued billing Plaintiffs for services they no longer controlled or performed.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

8.      Defendants then sold Plaintiffs back their own trademark for $924,260 — more than 30 times what they had paid for it two years earlier — and financed the repurchase through a Promissory Note secured by that same trademark. Defendants then terminated the supply relationship that was the only means by which Plaintiffs could generate revenue to service that Note — while simultaneously preserving and now seeking to enforce it — in a scheme designed to engineer a default that would return the Bower Hill trademark to Defendants.

9.      The result: a brand that won Double Gold at international competitions, established distribution in multiple states, and was on a measurable growth trajectory, has been reduced to near-zero. Plaintiffs hold approximately 1,028 cases of unsaleable mislabeled product in a warehouse. Their distribution relationships are gone. Their ability to service the Note has been destroyed. The brand that was demand-constrained from its very first days in market – with distributors backlogged and retail buyers waiting – was made to appear unreliable and unscalable through nine years of supply failures, quality defects, and product misrepresentations, deterring commercial partners and potential acquirers from engaging with the brand.

10.      Plaintiffs also recently discovered that Defendants had wrongfully retaken registrant control of bowerhillbourbon.com and bowerhillwhiskey.com – domain names Plaintiffs owed and paid for as part of the 2016 transaction – without Plaintiffs' knowledge or consent, without any court order, and during an active tolling and standstill period. Both domains now resolve to "Error 1001," destroying nine years of brand digital presence. Defendants hold no ownership title to these domains; their sole interest is a security interest under the Trademark Security Agreement, which does not authorize self-help seizure of intellectual property.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

11.    Plaintiffs seek damages for Defendants' fraud, breach of contract, negligent misrepresentation, tortious interference and other tortious conduct that destroyed their business, along with declaratory relief voiding the Note and Trademark Security Agreement, and injunctive relief preventing Defendants from enforcing the Trademark Security Agreement or exercising any rights over Plaintiffs' domain names pending resolution of this action.

12.    Brown and Clang individually seek: (a) a declaration that the personal guaranties of payment each executed on September 30, 2016 are unenforceable, void, or voidable on the same grounds as the Note; and (b) compensatory damages for the personal financial losses they sustained as a direct and proximate result of Defendants' fraud, breach of contract, and tortious conduct, including personal funds advanced to Kra-ze's operations under the Note and fact individual financial ruin as a result of Defendants' scheme to engineer a Note default.

**PARTIES**

13.    Plaintiff Kra-ze, LLC ("Kra-ze") is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business in Uncasville, Connecticut. None of Kra-ze's members are citizens of Missouri or Kansas.

14.    Plaintiff Carl Brown is an individual residing in the State of Connecticut. He is a co-founder of Kra-ze and serves as its CEO. Brown personally guaranteed all of Kra-ze's obligations under the Note dated September 30, 2016, pursuant to a guaranty of payment executed on that date.

15.    Plaintiff Kevin Clang is an individual residing int the State of Connecticut. He is a co-founder of Kra-ze and serves as its President. Clang personally guaranteed all of Kra-ze's obligations under the Note dated September 30, 2016, pursuant to a guaranty of payment executed on that date.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

16.      Defendant Luxco, Inc. ("Luxco") is a corporation organized and existing under the laws of the State of Missouri, with its principal place of business at 540 Maryville Centre Drive, Suite 300, St. Louis, Missouri 63141.

17.      Defendant MGPI Processing, Inc., f/k/a MGP Ingredients, Inc. ("MGP"), is a corporation organized and existing under the laws of the State of Kansas, with its principal place of business in Atchison, Kansas. MGP conducts substantial business in Missouri, including through Luxco, and on information and belief, maintains production, warehousing, and corporate operations in this Circuit. MGP is the ultimate parent and controlling entity of Luxco, having acquired it on or about April 1, 2021. As Luxco's successor and alter ego, MGP assumed Luxco's contractual obligations upon acquisition and is liable for the breaches and tortious conduct alleged herein, including all post-April 2021 conduct.

18.      Defendant Bottler, Inc. ("Bottler") is identified in the Supplier Agreement dated September 30, 2016, as a corporation organized and existing under the laws of the State of Missouri, with offices at 5050 Kemper Avenue, St. Louis, Missouri 63139, and is identified in that agreement as the party contracting with Plaintiffs. On information and belief, however, Bottler does not exist as a legally organized corporation under the laws of Missouri or any other state. Searches of relevant Secretary of State records have returned no results for any such entity. Bottler is joined because the Supplier Agreement purports to bind it, and because, to the extent Bottler has any legal existence, it is the alter ego of Luxco and D. Lux, who executed the agreement in Bottler's name. Discovery is needed to determine the full facts of Bottler's corporate status.

19.      Defendant Donn Lux is an individual residing in this Circuit. He is the Chairman of Luxco. D. Lux signed the Asset Purchase & Sale Agreement, the Bill of Sale, the Trademark Assignment, the License Agreement, the Trademark Security Agreement, and the Supplier

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

Agreement — the last in his capacity as "Chairman" of Bottler — as part of the integrated transaction described herein. At all relevant times, D. Lux directed, controlled, and personally participated in the conduct alleged herein.

20.     Defendant Paul T. Lux is an individual residing in Denver, Colorado. At all relevant times, he served as Director of Strategic Development for Luxco and as President of Meier's Wine Cellars ("MWC"), the entity to which Luxco delegated its non-delegable bottling obligations under the Supplier Agreement without Plaintiffs' knowledge or consent. P. Lux personally negotiated and executed portions of the integrated transaction documents, personally managed the MWC bottling relationship with Kra-ze, personally acquired MWC himself when Luxco divested it in January 2018, and personally continued to bill Kra-ze for bottling services through MWC while representing himself as a Luxco representative. He personally participated in the conduct alleged herein and is liable for fraud and unjust enrichment as set forth below.

21.     Upon information and belief, Does 1-99, inclusive, include individuals or business entities of unknown form affiliated in some manner with Luxco, MGP, Bottler, D. Lux, and/or P. Lux, and each of them is in some manner responsible or legally liable for the acts, events, cause of action, transactions, and circumstances alleged herein. The true names and capacities of these fictitiously named Defendants are presently unknown to Plaintiffs. They will amend their Petition to allege the Doe Defendants' true names when they become known to them.

22.     Further, upon information and belief, at all pertinent times to the lawsuit, all employees and/or agents of Defendants were acting in their individual capacity and also as agents of Defendants within the course and scope of their employment and/or authority and in furtherance of the business of Defendants. All acts and omissions of employees and agents of Defendants are imputed to their employees and principals, who are liable for such acts and omissions.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

23.     Finally, upon information and belief, Defendants entered into one or more agreements, acting in concert, to engage in the wrongful acts alleged herein for the purpose of causing injuries and damage to Plaintiffs and for Defendants' own benefit and financial gain. Specifically: (a) D. Lux personally executed the Supplier Agreement on behalf of "Bottler", a corporation he knew did not exist, to insulate Defendants from contractual liability; (b) P. Lux personally managed the undisclosed delegation of bottling obligations to MWC and billed Kra-ze for services through MWC without disclosure; (c) MGP, following its April 2021 acquisition of Luxco, directed the subordination of Bower Hill's bourbon supply to Luxco's own brand priorities, issues the unlawful 50% price increase, and directed the September 2023 termination; and (d) all Defendants coordinated the wrongful seizure of Plaintiffs' domain names without court order and during an active tolling period. Each of Defendants aided and abetted the others in carrying out the wrongdoing alleged herein.

## JURISDICTION AND VENUE

24.     This Court has personal jurisdiction over all Defendants pursuant to § 506.500 R.S.Mo. Luxco and D. Lux are residents of Missouri. The integrated transaction documents expressly and irrevocably submit the parties to "the exclusive personal jurisdiction of the federal and state courts located in the City or County of St. Louis, Missouri." Further, a substantial part of the acts and omissions giving rise to the claims herein occurred in this Circuit. The transaction was negotiated, executed, and performed in significant part in this Circuit.

25.     Venue is proper in the Circuit pursuant to § 508.010 R.S.Mo, as Luxco and D. Lux reside in the Circuit, the contracts at issue designate this venue, and a substantial part of the events giving rise to the claims occurred here.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

26.    Plaintiffs' damages are substantial. The amount in controversy easily exceeds $25,000, exclusive of interest and costs.

**GENERAL ALLEGATIONS**

**A.  The Origins of the Bower Hill Brand**

27.    Brown and Clang formed Kra-ze on or about April 27, 2010. They had known each other for approximately 50 years, having been childhood friends.

28.    Brown and Clang developed the idea of building a premium bourbon whiskey brand. Unable to distill or bottle the whiskey themselves, however, they sought a production partner. At the recommendation of a respected industry figure, Max Shapira of Heaven Hill Distillery, they were referred to Luxco and D. Lux.

29.    Beginning in 2013 and 2014, Plaintiffs developed the Bower Hill brand — including the trademark, bottle design, trade dress, labels, and customer relationships. The name was coined by Clang, and the brand was registered with the United States Patent and Trademark Office under U.S. Reg. No. 4,682,762.

30.    From the brand's earliest days, demand for Bower Hill exceeded available supply. As early as August 2014, Kra-ze had already stopped actively pitching Bower Hill to distributors because it was already backlogged on existing orders it could not fill. This documented demand-supply imbalance persisted throughout the parties' relationship – not because of insufficient consumer demand, but because of Defendants' repeated failures to supply adequate product.

8

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**B. The $30,000 Agreement – First Transaction (2014)**

31.     On October 24, 2014, pursuant to an Asset Purchase & Sale Agreement (the "$30,000 Agreement"), Plaintiffs sold the Bower Hill trademark and related assets to Luxco for the total sum of $30,000. Simultaneously, Luxco granted Plaintiffs an exclusive Trademark License Agreement to use the Bower Hill mark in connection with the sale of bourbon whiskey and entered into a Supplier Agreement to produce and bottle Bower Hill products.

32.     At the time of the $30,000 Agreement, Plaintiffs were a small company in financial distress, having struggled with supply shortages throughout 2014 and 2015 that were caused entirely by Luxco's failure to deliver bourbon. Defendants were aware of Plaintiffs' financial vulnerability and used it as leverage throughout the business relationship.

33.     Under the initial Supplier Agreement and License Agreement, Luxco held the Bower Hill trademark, controlled the bourbon supply, controlled the bottling process, and set pricing — leaving Plaintiffs entirely dependent on Luxco for every element of the business.

**C. The Integrated $1,000,000 Transaction (September 30, 2016)**

34.     On September 30, 2016 (the "Closing Date"), the parties entered into the following five instruments, all executed simultaneously as a single, integrated transaction (collectively, the "$1,000,000 Agreement"):

a) **Asset Purchase & Sale Agreement ("APA")**: Luxco sold the Bower Hill trademark and related assets back to Plaintiffs for a stated purchase price of $924,260, with additional consideration of $59,683.63 for inventory, totaling $1,091,482.00 (inclusive of accrued interest and adjustments) financed entirely through the Promissory Note.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

b) **Promissory Note ("Note")** ($1,091,482 at 5% fixed interest, 10-year term, annual installments of $109,148.20 commencing October 1, 2017, with monthly interest payments commencing November 1, 2016): Plaintiffs' obligation to pay the purchase price for the mark they had originally created.

c) **Trademark Security Agreement ("TSA")**: Plaintiffs pledged and collaterally assigned the Bower Hill trademark, U.S. Reg. No. 4,682,762, and all associated goodwill, domain names, trade dress, and licensing rights, to Luxco as security for all obligations under the Note.

d) **License Agreement**: Luxco granted Plaintiffs a license to use the mark "CRAFTED IN THE SPIRIT OF REBELLION." The License Agreement contains an exclusive forum selection clause designating the federal and state courts of the City or County of St. Louis, Missouri. The Licensing Agreement also contains a purported limitation on consequential and lost profits damages; however, that limitation is unenforceable because of fraud and failure of consideration. More specifically, (a) the entire transaction is voidable for fraudulent inducement (due to the "Bottler" fiction); (b) the clause does not apply to Plaintiffs' fraud count; (c) Defendants cannot rely on a limitation clause in an agreement they themselves breached; and (d) Missouri law does not permit a party to benefit from contractual limitations arising from its own fraud.

e) **Supplier Agreement**: Executed between "Bottler" and Plaintiffs. Under this agreement, Bottler agreed to be the exclusive producer, bottler, and warehouser of all Bower Hill products, subject to a Maximum Annual Cases cap of 10,000 cases per year and an annual price increase cap of 3%. The agreement bears the signature of Mr. Lux as "Chairman" of Bottler, and the notices provision directs all communications to "Donn Lux, CEO, Luxco,

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

5050 Kemper Avenue, St. Louis, Missouri 63139." Bottler further represented in Section 15(A) that it was "a corporation validly existing and in good standing under the laws of the State of Missouri." The Supplier Agreement contains a purported arbitration clause, however, it is not enforceable since: (a) Bottler is not a party to this case; and (b) the clause only covers disputes about "whether or not either party has complied with the terms of the [Supplier] Agreement"; and (c) the arbitration clause is voidable for fraudulent inducement (by naming a non-existent entity as the contracting party, Defendants ensured that if Plaintiffs ever tried to sue, they would face obstacles).

35.     The five instruments must be construed as a single, integrated transaction under Missouri law. Each instrument references the others, was executed simultaneously by the same parties on the same date and was delivered as a single closing package. The APA expressly lists the Supplier Agreement, License Agreement, Note, and TSA as required closing deliveries.

### D.  Bottler Does Not Exist

36.     Bottler does not exist as a corporation organized under the laws of the State of Missouri, or any other state. Searches of the Missouri Secretary of State's records, and the records of other states, have returned no results for any corporation by that name.

37.     In Section 15(A) of the Supplier Agreement, D. Lux, on behalf of "Bottler" represented and warranted that "Bottler is a corporation validly existing and in good standing under the laws of the State of Missouri." This representation was false when made. Defendants knew it was false when made. The representation was made with the intent of inducing Plaintiffs to execute the Supplier Agreement and the integrated transaction.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

38.     The consequences of this fiction were far-reaching and deliberate: by naming a non-existent entity as the contracting party in the Supplier Agreement — the instrument through which Plaintiffs' only supply of bourbon flowed — Defendants purported to insulate themselves from direct contractual and tort liability for Bottler's performance failures, while maintaining complete operational and financial control.

39.     Defendants' own communications confirm that Bottler had no independent existence and that the Supplier Agreement was performed – when performed at all – by Luxco and its agents. The September 12, 2023 termination notice as written on Luxco letterhead, signed by Craig Chadbourne, Luxco's Corporate Director of Supply Chain, and sent from a Luxco email address – purportedly "on behalf of Bottler" – to Plaintiffs. The Supplier Agreement's notice provisions directed all Bottler communications to D. Lux at Luxco's address. Furthermore, in November 2023, Chadbourne admitted in writing that Lux Row Distillers – the facility from which Bower Hill's bourbon was ultimately sourced – was "essentially set up to dump barrels and load the bulk out and really Luxco (our brands) is the only customer." This admission confirms that Defendants' performance of the Supplier Agreement was, throughout, a function of Luxco's own commercial priorities – not an independent contractual obligation of Bottler.

### E.  Luxco's Undisclosed Delegation of Bottling Obligations

40.     Section 3(A) of the Supplier Agreement required Bottler to "produce, process, bottle and warehouse the Product" in accordance with the Quality Control Specifications. It did not permit Bottler to delegate these obligations to a third party without Plaintiffs' consent.

41.     In breach of this obligation, Luxco performed the bottling of Bower Hill products through MWC, a subsidiary operating out of Cincinnati, Ohio, without disclosing this delegation to Plaintiffs.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

42.     On or about January 9, 2018, Luxco sold MWC to P. Lux, thereby transferring the actual bottling operation to an entirely outside Luxco's corporate family, without notice to or consent from Plaintiffs. Luxco continued billing Plaintiffs for bottling services as if it were performing them directly.

43.     On January 19, 2022, Vintage Wine Estates acquired MWC from P. Lux. The actual bottler of Bower Hill products was now a wine company with no relationship to Luxco, MGP, or the contractual chain — a fact never disclosed to Plaintiffs.

44.     On or about July 24, 2024, MWC filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware. Throughout this entire period, Defendants continued billing Plaintiffs under the Supplier Agreement as if they were performing their contractual obligations.

45.     On September 24, 2024, Bartow Ethanol of Florida, L.C. ("Bartow Ethanol") acquired MWC and certain assets of Vintage Wine Estates out of the Delaware bankruptcy proceeding. Unlike MWC and Vintage Wine Estates, Bartow Ethanol does not perform beverage bottling operations; it operates exclusively in bulk sales. Following the acquisition, Plaintiffs were required to communicate regarding their dry goods and finished inventory with representatives from entities identified variously as MWC, Bartow Ethanol, and "3 Rivers Winery" — a confusing and opaque succession of entities created through Defendants' unauthorized delegation chain, none of which had any contractual relationship with Plaintiffs. Bartow Ethanol informed Plaintiffs by email that unless their dry goods were retrieved by January 30, 2026, it would consider them abandoned and would destroy them. Plaintiffs received no formal legal notice of any destruction process, no documentation of any regulatory or legal authority to destroy the goods, and no prior notice that the bottling relationship upon which their entire commercial operation

13

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

depended had been transferred to an entity that does not bottle at all. Defendants are liable for all damages arising from this chain of undisclosed delegations, which ultimately left Plaintiffs without any means to produce their product, service distributor orders, or satisfy their obligations under the Note.

46.    As a direct result of Defendants' undisclosed delegation of production and bottling responsibilities to MWC, all TTB Certificates of Label Approval ("COLAs") for Bower Hill products remained issued in MWC's name through at least January 2024. As late as January 10, 2024, P. Lux, as President of Meier's Beverage Group, was required to issue letters to the Missouri Division of Liquor Control expressly granting Plaintiffs the right to use MWC's COLAs for each of the five Bower Hill SKUs. Because COLAs are required federal approvals governing the lawful labeling, composition, and sale of alcohol products, Plaintiffs were therefore unable to legally produce, bottle, or sell Bower Hill products independent of MWC's regulatory status. This created three distinct and severe harms: (a) Plaintiffs' ability to operate and market their products was entirely dependent on MWC — a third party in financial distress that ultimately filed for bankruptcy; (b) Plaintiffs faced potential regulatory and distribution risk if MWC's permits or approvals lapsed, were transferred, or were encumbered by bankruptcy proceedings; and (c) Plaintiffs had no practical ability to transition to independent production or correct their regulatory positioning because Defendants maintained exclusive control over the production relationship and TTB regulatory infrastructure. These consequences were the direct and foreseeable result of Defendants' unauthorized and undisclosed delegation.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**F.  Eight Years of Product Misrepresentation — Single Barrel and Barrel Strength**

47.    The Supplier Agreement required Bottler to supply, among other products, "Single Barrel" and "Barrel Strength" bourbon whiskeys. These terms carry specific and well-understood meanings in the distilled spirits industry and under federal TTB regulations.

48.    "Single Barrel" bourbon is bourbon drawn from a single 53-gallon charred new oak barrel. Because individual barrels vary in character, proof, and maturation, no two single barrel products are alike. A product labeled "Single Barrel" must be drawn from a single barrel. The bourbon industry and TTB regulations are clear on this point.

49.    "Barrel Strength" bourbon is bourbon bottled directly from the barrel without dilution or bottled at no more than two degrees of proof lower than the proof at which the whiskey was stored. 27 C.F.R. § 5.87(a). Because different barrels mature at different proofs and evaporation rates vary from barrel to barrel and season to season, the proof of truly barrel strength bourbon varies meaningfully from barrel to barrel and across time.

50.    From 2016 through 2023, Defendants supplied Bower Hill "Single Barrel" products not from individual barrels, but from 275-gallon totes containing blended bourbon from multiple barrels — a product that is, by definition, not single barrel bourbon. This practice continued for approximately eight consecutive years without any disclosure to Plaintiffs, who reasonably relied on Defendants' representations and the industry-standard meaning of "Single Barrel," and therefore had no reason to independently verify the source or composition of the product during that time. As a non-distiller producer entirely dependent on Defendants' production, Plaintiffs had no practical means to do so. Defendants affirmatively concealed the true nature of the product by: (a) failing to disclose their use of blended tote product rather than single-barrel product; (b) refusing, despite repeated requests and Plaintiffs' contractual right of

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

inspection under the Supplier Agreement, to provide mash bills, production records, or any information regarding product composition; and (c) maintaining exclusive control over all production, bottling, and sourcing decisions throughout the relationship. Plaintiffs first discovered this misrepresentation in or around November 2023, when independent investigation revealed for the first time that the product supplied as "Single Barrel" was sourced from blended totes.

51.     Even though the Supplier Agreement required Bottler to create and maintain full and accurate books of Kra-ze's inventories, ingredients, and packing supplies, and gave Plaintiffs the right to inspect and copy them with reasonable notice, Defendants refused to provide mash bills and other records despite numerous requests.

52.     Every bottle of Bower Hill "Barrel Strength" bourbon supplied from 2016 through the termination of the Supplier Agreement in 2023 was bottled at exactly 59.4% alcohol by volume (118.8 proof). Given the inherent barrel-to-barrel variation in proof across an eight-year period involving dozens of separate production runs, it is physically impossible for this product to have been truly barrel strength throughout. This is not naturally occurring consistency; it is manufactured uniformity inconsistent with genuine barrel strength production.

53.     As a result of these misrepresentations, Plaintiffs currently hold 1,028 cases of product that they marketed, sold, and labeled as "Single Barrel" bourbon but that Plaintiffs can no longer sell because of the risk of regulatory and consumer liability arising from the mislabeling.

### G. Undisclosed Change in Bourbon Provenance

54.     The TTB-approved COLAs for Bower Hill products, and the labels affixed to Bower Hill bottles, state that the bourbon is "Distilled and Aged in Louisville, Kentucky." This representation was accurate when initially approved and reflected MWC's operation in Cincinnati using Louisville-distilled bourbon.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

55.     Following the MGP/Luxco acquisition in April 2021, Defendants switched the source of bourbon supplied to Bower Hill from Louisville, Kentucky to Bardstown, Kentucky — the location of Lux Row Distillers, a Luxco distillery. Defendants did not inform Plaintiffs of this change. On information and belief, the substituted bourbon source included, but was not limited to, Lux Row Distillers in Bardstown, Kentucky.

56.     As a result, Plaintiffs continued — entirely unaware — to advertise, market, and sell Bower Hill bourbon as "Distilled and Aged in Louisville, Kentucky" when the product was in fact sourced from Bardstown. This exposed Plaintiff to TTB compliance violations, state regulatory liability, and consumer claims. Plaintiffs only discovered this change in approximately October 2023.

57.     The Supplier Agreement's Section 5(A) contains Bottler's express warranty that all products will "not be adulterated or misbranded within the meaning of the United States Federal Food, Drug and Cosmetic Act" and will be produced "in compliance with all other applicable U.S. and non-U.S. federal, state, provincial and local laws, rules, and regulations." Supplying bourbon from Bardstown while the labels stated Louisville was a breach of this express warranty and constituted misbranding under 27 C.F.R. Part 5.

### H.  The MGP Acquisition and Post-Acquisition Conduct

58.     On or about January 22, 2021, MGP and Luxco entered into an Agreement and Plan of Merger pursuant to which MGP acquired Luxco for approximately $475 million. The acquisition closed on April 1, 2021.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

59.     The MGP acquisition of Luxco constituted a "Change of Control" of Bottler under Section 10(A)(iii) of the Supplier Agreement. That provision required Bottler to provide Plaintiffs with at least thirty (30) days prior written notice of the Change of Control. Defendants gave Plaintiff no such notice.

60.     Following the acquisition, MGP's strategy prioritized the growth of its own branded spirits portfolio. Under MGP's ownership, Defendants began redirecting bourbon supply to MGP/Luxco's own brands. In November 2023, MGP's own Corporate Director of Supply Chain, Chadbourne, acknowledged in writing that Lux Row Distillers was "essentially set up to dump barrels and load the bulk out and really Luxco (our brands) is the only customer." This admission confirms that after the acquisition, Bower Hill's supply was subordinated to Defendants' own brand priorities.

61.     In or around August 2021, while Defendants were still performing under and billing Plaintiffs pursuant to the Supplier Agreement, David Bratcher informed Plaintiffs that Defendants could no longer supply Kentucky bourbon under the existing arrangement and proposed that Plaintiffs transition to Indiana-sourced bourbon. At all relevant times, Bower Hill's product labels expressly stated "Louisville, Kentucky" — the bourbon's approved COLA origin — and there was no COLA in place for Indiana bourbon. Defendants knew, or should have known, that substituting Indiana bourbon without first obtaining amended COLAs would render every bottle of Bower Hill mislabeled under federal TTB regulations, exposing Plaintiffs to federal regulatory violations. Defendants further knew that obtaining COLA amendments would require regulatory filings, production delays, and additional costs, and would disrupt Plaintiffs' existing inventory, distribution relationships, and market positioning. Defendants' proposed change put Plaintiffs in an untenable binary position: either accept non-compliant product and face regulatory violations

**18**

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

or halt all sales and incur immediate financial harm. While Defendants ultimately agreed to continue supplying Kentucky bourbon following multiple discussions, the incident: (a) materially disrupted Plaintiffs' production planning and operations; (b) created significant uncertainty regarding the continuity of compliant supply; and (c) demonstrated Defendants' willingness to unilaterally alter the material terms of their contractual performance without regard for Plaintiffs' regulatory obligations, brand integrity, or financial viability.

## I.  The Termination Scheme and Note Default

62.     On May 10, 2023, Bratcher sent a text message stating "Bower Hill would have been much cheaper!" in the context of discussing brand acquisitions – while Plaintiffs were still Defendants' active customer. This admission demonstrates that Defendants were aware of Bower Hill's suppressed value and were actively contemplating its acquisition at a distressed price engineered by their own supply failures. Further, when he responded, Bratcher said: "always looking, but they really need to have scale."

63.     On September 12, 2023, Chadbourne sent a termination notice on Luxco letterhead and from a Luxco email address — purportedly on behalf of "Bottler" — advising that the Supplier Agreement would terminate effective September 29, 2024. Simultaneously with the termination notice, Defendants raised the per-barrel price from $800 to $1,200 — a 50% increase — in direct violation of the Supplier Agreement's 3% annual price increase cap.

64.     The supply of bourbon under the Supplier Agreement was the sole source of revenue from which Plaintiffs could service their obligations under the Note. Defendants knew this and terminated the supply relationship while preserving their right to collect on the Note — a course of conduct that could only result in Plaintiffs' inability to make Note payments.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

65.    Plaintiffs had made Note payments totaling $1,018,836.19 — consisting of $744,441.31 in principal and $274,424.89 in interest — through at least November 2023. Following the termination, Plaintiffs' ability to continue payments was destroyed.

66.    On September 8, 2025, counsel for Luxco issued a formal default notice demanding that Plaintiffs bring their Note obligations current, with the threat of acceleration of all remaining principal and interest. The TSA gives Luxco a security interest in the Bower Hill trademark as collateral for the Note. Defendants' plan is plain: engineer a default by destroying Plaintiffs' only revenue source, then foreclose on the trademark they sold Plaintiffs for $924,260 — a trademark that Plaintiffs originally created.

### J.  Unauthorized Domain Seizure

67.    **Domain Ownership Under the 2016 APA**. The APA expressly included in Schedule 1.1 as Purchased Assets all "domain names, social media names, trade names, fictitious names" associated with the Bower Hill brand. Specifically, the 2014 transaction documents identified bowerhillbourbon.com and bowerhillwhiskey.com, parked with GoDaddy, as included assets. Plaintiffs purchased and paid for these domains as part of the $924,260 consideration financed through the Note. The TSA grants Luxco a security interest in the domains as collateral for the Note — not ownership. The TSA's remedies are those "more fully set forth in the Promissory Note," which require a default determination and enforcement proceedings; they do not authorize unilateral self-help seizure of intellectual property.

68.    **Unauthorized Domain Seizure**. In or around October 2025, Plaintiffs discovered that Luxco had retaken GoDaddy registrant control of bowerhillbourbon.com and bowerhillwhiskey.com — domains Plaintiffs owned, paid for, and actively used as Kra-ze's primary business web presence through at least late 2024. Current registrant records show Luxco

20

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

as the domain owner. Plaintiffs did not consent to this transfer, did not authorize any changes to the GoDaddy account, and no court has adjudicated a default under the Note or authorized Luxco to exercise any TSA remedies. The domains currently resolve to "Error 1001," rendering them inaccessible to consumers and destroying the digital web presence Kra-ze built over nine years.

69.    **Unauthorized Web Hosting Access**. The domain resolution failure (Error 1001) and the change in GoDaddy registrant status indicate that one or more Defendants accessed Plaintiffs' GoDaddy registrar account and/or web hosting account, modified DNS records, and altered account control, without their authorization. Neither Kra-ze nor any person authorized by Kra-ze made these changes. On information and belief, Defendants accessed these protected computer systems without authorization or in excess of any authorization within the meaning of 18 U.S.C. § 1030.

70.    **No Lawful Basis for Domain Seizure**. The Tolling Agreement executed May 1, 2025, expressly preserves Plaintiffs' Potential Claims and Luxco's Financing Claims and obligates both parties to refrain from litigation during the Tolling Period. Luxco's extrajudicial seizure of Plaintiffs' domains — without any court order, without any adjudicated default, and during an active tolling and standstill period — constitutes a breach of the Tolling Agreement, an improper self-help remedy, and a continuation of the scheme to destroy Kra-ze's business and reacquire its assets without paying fair value.

### K.  Brand Damage – Impairment of Growth Trajectory and Destruction of Acquisition Value

71.    Defendants' repeated supply failures, quality control breaches, and product misrepresentations did not merely violate the terms of the Supplier Agreement — they systematically impaired the Bower Hill brand's market position, distributor relationships, and

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

acquisition value over nine consecutive years. The harm to the brand is independent of, and in addition to, the harm to Plaintiffs' revenues.

72. **Demand Consistently Exceeded Supply**. From the outset of the relationship, consumer and distributor demand for Bower Hill exceeded Defendants' willingness to supply it. As early as August 2014, Plaintiffs had already stopped pitching Bower Hill to new distributors because they were backlogged with orders they could not fill. By mid-2015, Kra-ze held purchase orders for 2,646 cases — with distributors voluntarily holding back larger orders in anticipation of supply — and projected sales of 10,000-plus cases by year-end if product had been available since April. Defendants' supply failures, not lack of demand, prevented Bower Hill from ever approaching its contractual 10,000-case annual ceiling. Across 2017 through 2022, 1,071 contracted barrels were never delivered.

73. **Destruction of Critical Sales Windows**. In the spirits industry, the October through December period — known as "OND" — is the most critical sales window of the year for building brand distribution and generating retailer reorders. Defendants' supply failures destroyed this window for Bower Hill in consecutive years. In 2015, glass production delays caused Kra-ze to miss OND entirely across all its markets. Major distributors including Opici Family Distributors, RNDC, SW&S, and General Beverage deferred or refused orders pending full product availability. Kra-ze had attended a major trade show in Indiana with hundreds of retail buyers immediately before this disclosure and was unable to fulfill any resulting orders. Missing OND does not merely cost revenue for that quarter — it costs shelf space, reorder cycles, and distributor confidence that takes years to rebuild.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

74.    **Named Distributor and Retail Account Losses**. Defendants' conduct caused specific, documented losses of named distributor and retail accounts. In June 2021, Defendants shipped wrong product to Johnson Brothers of Florida, directly causing Plaintiffs to lose the ABC Liquors retail chain account. In June 2022, Eagle Rock Distributing Company of Colorado received Bower Hill products with missing tamper-evident seals and defective closures, impairing the distributor relationship. In July 2022, Eagle Rock Distributing Company of Georgia received defective product with unsecured closures, requiring Plaintiffs to offer retailer compensation to preserve the account. Individual retail accounts across multiple states received mislabeled, seal-deficient, or wrong-SKU product, facing consumer complaints and regulatory exposure attributable entirely to Defendants' quality failures.

75.    **Inability to Answer Basic Brand Questions**. Throughout the relationship, distributors and consumers repeatedly asked where the bourbon was distilled and what the mash bill was — standard questions for premium bourbon brands on which purchasing decisions are made. Defendants refused to disclose the mash bill and, after the undisclosed switch from Louisville to Bardstown, the provenance answer was itself a regulatory liability. As of May 2016, Plaintiffs described this directly to Defendants: "we have no web site, we cannot tell people where it is made, nor can we divulge the mash bill, which are all things requested of us on a continuous basis." A premium bourbon brand that cannot answer these questions is at a permanent competitive disadvantage in the premium spirits market.

76.    **Supply Subordinated to Defendants' Own Brands**. Following the MGP acquisition, documentary evidence confirms that Bower Hill's supply was explicitly subordinated to Luxco's and MGP's own brands. In August 2021, Bratcher told Plaintiffs that Kentucky bourbon was unavailable because Luxco "can't fill our own brands." In September 2021, Chadbourne

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

confirmed that bulk bourbon would not be available to MWC for Bower Hill until after Luxco's own inventory needs were met. In November 2023, Chadbourne admitted in writing that Lux Row Distillers was "essentially set up to dump barrels and load the bulk out and really Luxco (our brands) is the only customer." These admissions confirms that Bower Hill's supply was not merely inadequate — it was deliberately relegated below Defendants' own commercial priorities.

77.    **Destruction of Acquisition Value and Deterrence of Commercial Partners**. The cumulative effect of nine years of supply suppression, quality failures, and brand mismanagement was the destruction of Bower Hill's acquisition value and the deterrence of potential commercial partners and acquirers. Plaintiffs' stated commercial objective — communicated to Defendants beginning in 2015 — was to build the brand to an acquisition-ready level. Defendants were fully aware of this goal. However, Defendants' conduct rendered Bower Hill unreliable and unscalable in the market — the precise attributes that potential acquirers evaluate. On information and belief, Plaintiffs sought and were unable to attract or complete acquisition or partnership discussions with potential commercial partners as a direct result of Defendants' conduct. Bratcher's own May 2023 text message — "Bower Hill would have been much cheaper!" — demonstrates that Defendants themselves recognized the brand's suppressed value and were contemplating its distressed acquisition. Absent Defendants' suppression, Bower Hill could have commanded acquisition value in excess of $12.7 million based on industry-standard EBITDA multiples applied to but-for performance.

### L.  The Applicable Statutes of Limitation Are Tolled

78.    The applicable statutes of limitations for Plaintiffs' claims are tolled by Defendants' fraudulent concealment of the facts giving rise to those claims.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

79.    Throughout the parties' relationship, Defendants actively and affirmatively concealed their wrongful conduct from Plaintiffs. Defendants did not inform Plaintiffs that they were using MWC — a non-party to the agreements — to bottle Kra-ze's bourbon whiskey, and indeed continued to bill Plaintiffs for bottling services as though Luxco/Bottler were performing them directly.

80.    Unbeknownst to Plaintiffs, and for the entire period of the relationship between the parties, Luxco/Bottler/D. Lux never truly provided Single Barrel or Barrel Strength whiskeys as represented and contractually required. Defendants represented that the whiskey supplied was Single Barrel and Barrel Strength, while concealing that it was not. Defendants further refused, despite repeated requests and Plaintiffs' contractual right of inspection, to provide mash bills, barrel specifications, or any production records that would have revelated the blended tote practice, the invariant-proof Barrel Strength production, or the provenance change. This affirmative refusal to provide required records was itself an ongoing act of fraudulent concealment. These misrepresentations were ongoing, affirmative acts of concealment made with the specific purpose of inducing Plaintiffs to continue accepting and selling product they would have rejected had the truth been known.

81.    Plaintiffs exercised reasonable diligence in attempting to discover Defendants' wrongdoing, but the nature and extent of Defendants' misconduct was not reasonably discoverable prior to recent investigation in this matter. Many of Defendants' actions have only become clear in recent months. Plaintiffs could not have discovered these claims earlier through reasonable diligence given Defendants' active concealment.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

82.    By reason of Defendants' fraudulent concealment, the statutes of limitations applicable to Plaintiffs' claims did not begin to run until they discovered, or in the exercise of reasonable diligence should have discovered, the existence of its claims. Accordingly, all claims asserted herein are timely.

83.    In addition, on May 1, 2025, the parties executed a Tolling and Standstill Agreement (the "Tolling Agreement"), which tolled all applicable statutes of limitation during the "Tolling Period" as defined therein, and further obligated both parties to refrain from litigation and self-help remedies during that period.

### COUNT I – BREACH OF CONTRACT
### *(Against Defendants Luxco, MGP, Bottler, D. Lux, and P. Lux)*

84.    Plaintiffs re-allege and incorporate by reference all prior paragraphs as though fully set forth herein.

85.    The $1,000,000 Agreement — consisting of the APA, Note, TSA, License Agreement, and Supplier Agreement — constitutes a valid, binding, and integrated contract between Plaintiffs, on the one hand, and Luxco, MGP (as Luxco's successor and alter ego, having assumed Luxco's obligations upon the April 2021 acquisition and having directed the post-acquisition conduct described herein), Bottler (as Luxco's alter ego), D. Lux (as the individual who personally directed, executed, and controlled all aspects of the agreement), and P. Lux (as the individual who personally managed the MWC delegation and billed Plaintiffs for services through MWC without disclosure), on the other. Under Missouri law, instruments executed simultaneously by the same parties, as part of the same transaction, must be construed together as one agreement.

86.    Plaintiffs fully performed their obligations under the $1,000,000 Agreement, including making all required Note payments totaling $1,018,836.19 through November 2023.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

87.    Defendants breached the $1,000,000 Agreement in the following material respects, each of which constitutes an independent breach:

a)  **Undisclosed Delegation of Bottling Obligations**. Section 3(A) of the Supplier Agreement required Bottler to personally produce, process, bottle, and warehouse the Products. Defendants delegated these non-delegable obligations to MWC without Plaintiffs' consent, then sold MWC to an unaffiliated third party while continuing to bill Plaintiffs for services they no longer performed.

b)  **Failure to Supply True Single Barrel Products**. Defendants supplied bourbon in blended 275-gallon totes and labeled the resulting product "Single Barrel," in violation of the Supplier Agreement's quality requirements and Section 5(A)'s express compliance warranty.

c)  **Failure to Supply True Barrel Strength Products**. Defendants supplied bourbon bottled at an invariant 59.4% ABV across every production run for eight years, which is inconsistent with genuine barrel strength production. This violated the Supplier Agreement's quality and compliance warranties.

d)  **Undisclosed Change in Bourbon Provenance**. Defendants switched the bourbon source from Louisville to Bardstown without notice to Plaintiff, causing it to market and sell products with materially inaccurate labels, in breach of Section 5(A)'s express warranty against misbranding. On information and belief, the substituted source included, but was not limited to, Lux Row Distillers in Bardstown, Kentucky.

e)  **Failure to Deliver Orders Timely**. Section 3(F) of the Supplier Agreement required Bottler to ship products within one month of receipt of a Customer Order. Defendants repeatedly failed to meet this deadline, causing Plaintiffs to lose shelf space, distributor

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

accounts, and retail chain placements. Defendants' supply failures prevented Plaintiffs from ever reaching the 10,000-case annual cap, suppressing revenue and brand growth throughout the relationship.

f) **Shipment of Defective Product**. On many occasions, Defendants shipped products missing required tamper-evident seals, shipped bottles with labels affixed to the wrong products, and shipped products to incorrect distribution destinations.

g) **Unauthorized Price Increase**. Exhibit I to the Supplier Agreement limited annual price increases to 3% per year. On September 12, 2023, however, Defendants raised the per-barrel price from $800 to $1,200 — a 50% increase — in direct violation of this contractual limit.

h) **Change of Control Without Notice**. The MGP acquisition of Luxco in April 2021 constituted a Change of Control of Bottler under Section 10(A)(iii) of the Supplier Agreement, triggering a mandatory 30-day prior written notice obligation. Defendants, however, gave no notice.

i) **Wrongful Termination**. The September 12, 2023, termination notice was issued on Luxco letterhead by a Luxco employee, without legitimate contractual basis, without the required three-month advance notice preceding the effective termination date, and in breach of Defendants' obligation to continue performing under the Supplier Agreement.

j) **Breach of the Implied Covenant of Good Faith and Fair Dealing**. Under Missouri law, every contract imposes on each party a duty of good faith and fair dealing in its performance. Defendants breached this duty by, among other things: exercising control over supply volume and pricing in a manner designed to suppress Plaintiffs' growth; delegating bottling obligations without disclosure; redirecting supply to Defendants' own

28

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

branded products following the MGP acquisition; raising per-barrel prices in violation of contractual caps; terminating the Supplier Agreement while preserving the Note obligation — with knowledge that the termination would destroy Plaintiffs' sole means of making Note payments — in a course of conduct designed to engineer a default and trigger the TSA; and seizing Plaintiffs' domain names during an active Tolling Agreement standstill period.

88.     At all relevant times, Defendants maintained exclusive control over every element of the production, bottling, and shipping chain for Bower Hill products. Section 3(A) of the Supplier Agreement gave Defendants sole responsibility for production, bottling, and fulfillment. Defendants knew — because they controlled these functions entirely — that failures in production, quality control, or shipping would directly and foreseeably damage Plaintiffs' relationships with distributors, retailers, and consumers. Despite this knowledge and exclusive control, Defendants repeatedly failed to perform, causing the specific relationship damages described herein.

89.     Defendants' breaches directly and proximately caused Plaintiffs damages, including: lost profits from supply suppression across 2016 through 2023; diminution in brand and acquisition value; stranded inventory of 1,028 unsaleable cases; loss of specific distributor relationships and retail accounts including the ABC Liquors retail chain in Florida; destruction of critical OND sales windows in consecutive years; reputational harm to the brand across distributors, retailers, and consumers; inability to answer basic brand authenticity questions; and the inability to service the Note after Defendants destroyed the supply relationship that was Plaintiffs' sole revenue source.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants Luxco, MGP, Bottler, D. Lux, and P. Lux, jointly and severally, for: (a) compensatory damages in an amount to be proven at trial; (yes, leave this out)(b) pre-judgment interest at the applicable Missouri statutory rate; (c) attorneys' fees and costs; and (d) such other relief as the Court deems just and proper.

### COUNT II – FRAUD, FRAUDULENT MISREPRESENTATION, AND FRAUDULENT INDUCEMENT
*(Against Defendants Luxco, MGP, Bottler, D. Lux, and P. Lux)*

90. Plaintiffs re-allege and incorporate by reference all prior paragraphs.

91. MGP is liable for the fraudulent misrepresentations described herein as successor and alter ego of Luxco. Further, MGP independently participated in the ongoing fraud following the April 2021 acquisition by continuing to supply mislabeled products, concealing the change in bourbon provenance, subordinating Bower Hill's supply to MGP's own brands, and directing the conduct giving rise to the termination scheme. P. Lux is liable for fraud by virtue of his personal participation in the undisclosed MWC delegation and his personal billing of Plaintiffs for services through MWC without disclosure.

92. Under Missouri law, a claim for fraud requires: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or his ignorance of its truth; (5) the speaker's intent that it should be acted on by the hearer; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance; (8) the hearer's right to rely; and (9) proximate injury. Each of the following misrepresentations satisfies all elements.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**Misrepresentation 1 – Fraudulent Inducement: The Bottler Fiction**

93.    In connection with the execution of the Supplier Agreement on September 30, 2016, Defendants represented in Section 15(A) of that Agreement that "Bottler is a corporation validly existing and in good standing under the laws of the State of Missouri." This representation was made on behalf of Bottler by D. Lux, who signed as Bottler's Chairman.

94.    This representation was false. Bottler does not exist as a validly organized Missouri corporation.

95.    Defendants made this representation knowingly and with the intent of inducing Plaintiffs to execute the Supplier Agreement and the integrated transaction, which bound Plaintiffs to pay $1,091,482 under the Note secured by its trademark. Defendants' motive was clear: by naming a fictitious entity as the contracting party, Defendants could accept the benefits of the Supplier Agreement while insulating themselves from direct liability for its obligations.

96.    Plaintiffs reasonably relied on this representation. Plaintiffs would not have entered into the $1,000,000 Agreement had they known that their contracting counterparty for supply — the party whose performance was the entire basis of the commercial relationship — did not legally exist.

**Misrepresentation 2 — Eight Years of Product Misrepresentation**

97.    From 2016 through 2023, Defendants represented to Plaintiffs, through the products they supplied and the labeling they provided, that Bower Hill products were genuine Single Barrel and genuine Barrel Strength bourbon whiskeys. These representations were embodied in the product labels and were the basis on which Plaintiffs marketed and sold the products.

98.    These representations were false. Defendants supplied bourbon labeled and sold as "Single Barrel" that was, in fact, blended from multiple barrels including tote-sourced product, and therefore was not a single-barrel product by any industry or regulatory definition. Defendants also supplied bourbon labeled as "Barrel Strength" that was not true barrel strength, but rather proof-adjusted and/or invariant-proof product, inconsistent with the industry standard and regulatory definition. In addition, the products supplied under these designations: (a) lacked the flavor variability and profile distinctions inherent to true single barrel and barrel strength products, which by their nature vary meaningfully from barrel to barrel, batch to batch, and across production runs; and (b) presented uniform characteristics that did not align with the represented product categories. Further, Defendants supplied products labeled as "Barrel Reserve" and "Barrel Strength" in a manner that was internally inconsistent, commercially misleading, and not grounded in recognized industry definitions, rendering those designations effectively arbitrary.

99.    Defendants knew these representations were false. The production process used by Defendants — blending in 275-gallon totes and bottling at a fixed proof — is fundamentally inconsistent with Single Barrel and Barrel Strength production, a fact known to Defendants as professional spirits producers.

100.    Defendants made these representations with the intent that Plaintiffs would act on them by selling the products to consumers, thereby generating revenue that funded the Note payments that Defendants collected.

101.    Plaintiffs justifiably relied on these representations and had no reason to doubt their truth. As non-distiller producers entirely dependent on Defendants' production, Plaintiffs had no practical ability to independently verify the bourbon's production method.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

102.    As a direct and proximate result of these misrepresentations, Plaintiffs sold products that were mislabeled, now holds 1,028 unsaleable cases of mislabeled product, and face TTB compliance and consumer liability exposure.

### Misrepresentation 3 — Refusal to Disclose Mash Bill – Fraudulent Concealment

103.    Defendants compounded their fraudulent misrepresentations by affirmatively refusing, despite repeated requests and Plaintiffs' contractual right of inspection under the Supplier Agreement, to provide mash bills or production records that would have revealed the blended tote practice, the invariant-proof Barrel Strength production, or the provenance change. This refusal was itself an ongoing act of fraudulent concealment, further tolling the applicable statutes of limitations and demonstrating Defendants' knowing intent to perpetuate the fraud.

### Misrepresentation 4 - Bourbon Provenance Misrepresentation

104.    The Bower Hill labels, bearing TTB-approved COLAs, stated: "Distilled and Aged in Louisville, Kentucky." Defendants continued to supply bourbon for these labeled products while, after April 2021, sourcing that bourbon from Bardstown, Kentucky — not Louisville.

105.    By continuing to supply bourbon for Bower Hill products under the Louisville-origin COLA after changing the bourbon's source, Defendants made an ongoing, affirmative misrepresentation by conduct, knowing that Plaintiff would continue marketing and selling the product under its existing labels.

106.    Plaintiffs were unaware of these material changes until approximately October 2023. Throughout the relevant period, Plaintiffs justifiably relied on Defendants' continued performance under the Supplier Agreement to assume that all bourbon supplied: (a) conformed to previously approved COLA specifications governing origin, composition, and product type; and (b) matched the representations Defendants had made regarding product type, geographic origin,

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

and composition. Defendants maintained exclusive control over all production, sourcing, and bottling operations, and did not disclose: (i) changes in bourbon source and composition, including the undisclosed switch from Louisville to Bardstown; (ii) the use of blended or non-conforming product supplied as "Single Barrel" or "Barrel Strength"; or (iii) any deviation from the approved labeling specifications under the Bower Hill COLAs. Defendants further refused, despite repeated requests and Plaintiffs' contractual right of inspection, to provide mash bill details, barrel specifications, or other information necessary to verify product conformity and regulatory compliance. As a direct result of Defendants' exclusive control and affirmative refusal to provide material information, Plaintiffs had no reasonable means to independently discover that the supplied product deviated from its labeled and approved specifications until late 2023.

**Damages and Punitive Relief**

107.    All of the foregoing misrepresentations were made knowingly, intentionally, and with complete indifference to the rights and interests of Plaintiffs, warranting an award of punitive damages under Missouri law. The fraud was sustained over nine years, involved multiple independent misrepresentations spanning product labeling, corporate identity, and bourbon provenance, and was designed to enrich Defendants at Plaintiffs' direct expense. In further support of punitive damages: (a) D. Lux personally executed the Supplier Agreement on behalf of a corporation he knew did not exist; (b) Defendants refused to provide mash bills and production records for eight consecutive years despite Plaintiffs' contractual right of inspection; (c) Bratcher's May 2023 text message demonstrates that Defendants were planning to acquire the Bower Hill brand at a distressed price while still performing as Plaintiffs' supplier; and (d) Defendants seized Plaintiffs' domain names after executing a Tolling Agreement expressly requiring both parties to refrain from self-help remedies.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants Luxco, MGP, Bottler, D. Lux, and P. Lux, jointly and severally, for: (a) compensatory damages in an amount to be determined at trial; (b) punitive damages; (c) pre-judgment interest; (d) attorneys' fees and costs; and (e) such other relief as the Court deems just and proper.

### COUNT III – NEGLIGENT MISREPRESENTATION
*(Against Defendants Luxco, MGP, Bottler, D. Lux, and P. Lux)*

108. Plaintiffs re-allege and incorporate by reference all prior paragraphs.

109. Missouri adopts the tort of negligent misrepresentation as set forth in Restatement (Second) of Torts § 552. One who, in the course of their business, profession, or employment, or in any other transaction in which they have a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused by justifiable reliance on the information, if they fail to exercise reasonable care or competence in obtaining or communicating the information.

110. Defendants, in the course of their professional business as bourbon producers and suppliers bound by federal TTB regulations and the quality covenants of the Supplier Agreement, supplied the following false information to Plaintiffs for the guidance of their business: (a) that products supplied as "Single Barrel" were drawn from individual barrels; (b) that products supplied as "Barrel Strength" were bottled at or near barrel proof; (c) that the bourbon supplied was distilled and aged in Louisville, Kentucky; and (d) that Bottler was a validly organized Missouri corporation with the capacity to perform the Supplier Agreement.

111. Defendants failed to exercise reasonable care or competence in making these representations. As licensed and regulated professional spirits producers, Defendants knew or reasonably should have known that each of these representations was false.

35

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

112.    Plaintiffs justifiably relied on all of these representations in: accepting and paying for the products; marketing and selling the products to consumers under the representations contained in the labels; continuing to make Note payments in reliance on the continuation of a supply relationship built on those representations; and executing the $1,000,000 Agreement in reliance on the validity of Bottler as a legal entity.

113.    As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs suffered damages including stranded inventory, TTB compliance exposure, consumer liability, loss of distributor relationships, and diminution in brand value.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants for: (a) compensatory damages; (b) consequential damages; (c) pre-judgment interest; (d) attorneys' fees and costs; and (e) such other relief as the Court deems just and proper.

## COUNT IV – PRIMA FACIE TORT
### (Against All Defendants)

114.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

115.    Under Missouri law, prima facie tort provides a remedy for intentional lawful acts that are done primarily to cause injury to another, without justification.

116.    Defendants, acting intentionally and without justification, engaged in a coordinated course of conduct designed to destroy Plaintiffs' business, including: naming a fictitious entity as the contracting party in the Supplier Agreement to insulate themselves from liability; misrepresenting the nature and provenance of the products supplied for eight years; selling Plaintiffs back their own trademark at a 30.81x markup; terminating the supply relationship while preserving the Note obligation with knowledge that this would destroy Plaintiffs' sole revenue source and trigger a Note default; raising the per-barrel price by 50% simultaneously with

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

the termination notice; seizing Plaintiffs' domain names without court order and during an active Tolling Period; and now seeking to enforce the TSA and foreclose on the Bower Hill trademark.

117.    These acts were done with the specific intent to injure Plaintiffs, to destroy the value of the Bower Hill brand, and to enable Defendants to reacquire the mark through the TSA at a distressed value. The conduct caused the destruction of a small business and the personal financial ruin of its founders.

118.    Plaintiffs suffered damages as a direct and proximate result of Defendants' intentional tortious conduct.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, jointly and severally, for: (a) compensatory damages; (b) punitive damages; (c) pre-judgment interest; (d) attorneys' fees and costs; and (e) such other relief as the Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT
### *(Against All Defendants)*

119.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

120.    Missouri recognizes a claim for unjust enrichment where Defendants have received a benefit under circumstances in which it would be unjust to allow them to retain that benefit without compensating Plaintiffs.

121.    In 2014, Defendants acquired the Bower Hill trademark and related assets for $30,000. In 2016, Defendants re-sold those same assets to Plaintiffs for $924,260 — a 30.81x markup — financed entirely by the Note. Defendants set this price. No arms-length market valuation supported a 30.81x appreciation in two years, particularly given that Plaintiffs' growth during that period had been suppressed by Defendants' own supply failures.

122. Plaintiffs made Note payments totaling $1,018,836.19 from 2016 through at least November 2023. These payments were made in reasonable reliance on Defendants' continuing performance of their supply obligations.

123. Defendants received these payments while simultaneously: failing to supply bourbon of the quality and provenance represented; suppressing Plaintiffs' growth by enforcing a 10,000-case annual cap; redirecting supply to their own branded products after acquiring Luxco; raising per-barrel pricing 50% in violation of the contractual cap; and ultimately terminating the supply relationship that was Plaintiffs' sole source of revenue, with knowledge that the foreseeable result was a Note default and TSA foreclosure.

124. Under these circumstances, it is unjust and inequitable to permit Defendants to retain: (a) $1,018,836.19 in Note payments for a transaction whose consideration wholly or substantially failed; (b) the proceeds of a 30.81x trademark markup engineered through exploitation of Plaintiff's financial distress; and (c) the benefit of nine-plus years of Plaintiffs' brand-building labor, marketing, and distribution development — all of which accrued to the Bower Hill trademark that Defendants now seek to reacquire through the TSA at a distressed price.

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, jointly and severally, for: (a) restitutionary damages of no less than $1,018,836.19, plus the suppression-adjusted present value of the Bower Hill trademark; (b) disgorgement of all benefits wrongfully retained; (c) pre-judgment interest; (d) attorneys' fees and costs; and (e) such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

## COUNT VI – UNAUTHORIZED DOMAIN SEIZURE: CONVERSION, BREACH OF CONTRACT, AND WRONGFUL SELF-HELP ENFORCEMENT OF TSA
### (*Against All Defendants*)

125.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

126.    Plaintiffs are and have been at all relevant times the owner of the domain names bowerhillbourbon.com and bowerhillwhiskey.com (the "Domains"), having purchased them as Purchased Assets under the 2016 APA for valuable consideration as part of the $924,260 purchase price financed through the Note.

127.    Defendants hold only a security interest in the Domains under the TSA. The TSA does not authorize self-help transfer of domain registrations. No court has entered a judgment adjudicating a Note default; no court has authorized Defendants to exercise TSA remedies; and the Tolling Agreement executed May 1, 2025, obligated both parties to refrain from litigation and self-help remedies during the Tolling Period.

128.    Notwithstanding the foregoing, in or about October 2025, Defendants wrongfully retook registrant control of both Domains by altering GoDaddy account records without Plaintiffs' knowledge or consent. Current registrant records reflect Luxco as owner. The Domains now resolve to Error 1001, rendering Kra-ze's digital presence — nine years of brand-building, marketing investment, and consumer recognition — entirely inaccessible.

129.    **Conversion**. Defendants' retaking of registrant control constitutes conversion of Plaintiffs' personal property. Defendants exercised dominion and control over the Domains inconsistent with Plaintiffs' ownership rights, permanently and without authorization depriving them of their use and value.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

130.    **Breach of Contract / Wrongful Self-Help**. The 2016 APA transferred the Domains to Plaintiffs as Purchased Assets. The TSA grants only a security interest and does not authorize unilateral transfer of domain registrations without judicial process. Defendants' extrajudicial seizure of the Domains breaches the APA, violates the implicit covenant against self-help IP seizure in the TSA, and breaches the Tolling Agreement's standstill obligation.

131.    **Trespass to Chattels.** Even if not constituting outright conversion, Defendants intentionally interfered with Plaintiffs' GoDaddy registrar account and web hosting infrastructure — property in which Plaintiffs hold a legally cognizable interest — causing measurable impairment to the value and functionality of those assets. Defendants' interference deprived Plaintiffs of the use and benefit of nine years of accumulated digital brand equity, consumer web traffic, distributor recognition, and online commercial presence, causing damages recoverable under Missouri common law.

132.    **Irreparable Harm**. The Domains are unique, non-fungible assets. The Bower Hill brand's nine-year web presence — including consumer search history, inbound links, distributor and retailer recognition, and brand association — cannot be monetarily restored once destroyed. Plaintiffs are entitled to immediate injunctive relief requiring Defendants to transfer registrant control of both Domains back to Plaintiffs pending resolution of this action.

WHEREFORE, Plaintiffs respectfully requests: (a) compensatory damages for the full value of the Domains and Kra-ze's lost web presence; (b) punitive damages for Defendants' willful, knowing conversion and wrongful self-help seizure of Plaintiffs' domain assets; (c) an immediate mandatory injunction requiring Defendants to transfer GoDaddy registrant control of bowerhillbourbon.com and bowerhillwhiskey.com to Plaintiffs; (d) an order restoring all DNS

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

records and web hosting configurations to their state as of the date of Defendants' unauthorized access; (e) attorneys' fees and costs; and (f) such other relief as the Court deems just and proper.

**COUNT VII – VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
(*Against All Defendants*)

133.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

134.    The Missouri Merchandising Practices Act ("MMPA"), § 407.010 et seq. R.S.Mo., prohibits "unfair or deceptive acts, practices, or conduct in connection with the sale or advertisement of any merchandise in trade or commerce." § 407.020 R.S.Mo.

135.    In connection with the sale of the Bower Hill trademark and related assets to Plaintiffs under the 2016 APA — a commercial transaction in Missouri for $924,260 — Defendants engaged in unfair and deceptive practices by: (a) representing that Bottlert. was a validly existing Missouri corporation when it was not; (b) misrepresenting the quality, character, and provenance of the bourbon products Defendants would supply under the Supplier Agreement, including misrepresenting that the products would be genuine Single Barrel and Barrel Strength bourbon; and (c) concealing the undisclosed delegation of bottling obligations to MWC, the sale of MWC to P. Lux, and the change in bourbon source from Louisville to Bardstown.

136.    Plaintiffs relied on these representations in executing the $1,000,000 Agreement and making $1,018,836.19 in Note payments. Plaintiffs suffered ascertainable loss as a direct result.

137.    Defendants' conduct constitutes deceptive and unfair practices within the meaning of the MMPA and warrants an award of actual damages, punitive damages, and attorneys' fees under § 407.025 R.S.Mo.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, jointly and severally, for: (a) actual damages; (b) punitive damages; (c) attorneys' fees and costs as provided by § 407.025 R.S.Mo.; and (d) such other relief as the Court deems just and proper.

## COUNT VIII – TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY
### (*Against All Defendants*)

138.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

139.    At all relevant times, Plaintiffs maintained valid, existing business relationships and reasonable business expectancies with the following distributors and retail accounts, among others: Johnson Brothers of Florida; ABC Liquors, Inc.; Eagle Rock Distributing Company (Colorado); Eagle Rock Distributing Company (Georgia); RNDC; Opici Family Distributors; SW&S / Southern Wine & Spirits; General Beverage; and numerous individual retail accounts across multiple states.

140.    Defendants had direct knowledge of each of these relationships. As the exclusive producer and bottler of Bower Hill products, Defendants participated in distribution planning, programming discussions, and distributor communications throughout the relationship. Defendants knew that their supply, bottling, and shipping performance was the direct mechanism by which Plaintiffs could service and grow these relationships.

141.    At all relevant times, Defendants maintained exclusive control over production, bottling, and shipping of all Bower Hill products under the Supplier Agreement. Defendants knew — because they controlled these functions entirely — that failures in production, quality control, or shipping would directly and foreseeably damage Plaintiffs' relationships with distributors, retailers, and consumers. Despite this knowledge and exclusive control, Defendants repeatedly failed to perform.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

142.    Defendants intentionally — or with complete indifference to the foreseeable consequences — interfered with these business relationships through the following specific acts:

a) **Johnson Brothers of Florida / ABC Liquors, Inc**.: In or about December 2020 through June 2021, Defendants shipped wrong product to Johnson Brothers of Florida, directly causing Plaintiffs to lose the ABC Liquors retail chain account in Florida. The wrong-product shipment is documented by Johnson Brothers' return records. Though Defendants eventually acknowledged their error, the damage to the ABC retail chain account had already occurred and could not be remedied.

b) **Eagle Rock Distributing Company (Colorado):** In June 2022, Defendants shipped Bower Hill Single Barrel products with missing tamper-evident seals and defective closures to Eagle Rock Distributing Company of Colorado, impairing Plaintiffs' standing with that distributor and damaging the brand's reliability reputation in that market.

c) **Eagle Rock Distributing Company (Georgia):** In July 2022, Defendants shipped defective product with unsecured closures to Eagle Rock Distributing Company of Georgia, resulting in customer returns and requiring Plaintiffs to offer retailer compensation to preserve the account relationship — a direct financial cost caused entirely by Defendants' defective product.

d) **RNDC**: As of August 2015, Plaintiffs were on the verge of activating RNDC distribution across North Dakota, South Dakota, Nebraska, and Colorado. Defendants' supply failures in OND 2015 destroyed this prospective multi-state launch before it could commence.

e) **Opici Family Distributors**: As of August 2015, Opici held purchase orders for 945 cases across 7 markets. Defendants' glass production failures caused a shortage of 45 cases to Opici, disrupting the multi-state relationship at a critical launch stage.

43

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

f) **SW&S / Southern Wine & Spirits**: As of early 2016, Plaintiffs were in final stages of activating SW&S relationships in North Carolina, Virginia, and West Virginia. Defendants' supply failures and pricing structure issues disrupted this activation.

g) **Individual Retail Accounts**: Across multiple states, Defendants shipped products with missing tamper-evident seals, mislabeled products, and wrong-SKU shipments to Plaintiffs' distributors, who in turn delivered defective product to individual retail accounts. These retail accounts faced consumer complaints, product returns, and regulatory exposure directly attributable to Defendants' quality failures. Plaintiffs received complaints from all their distributors at various times regarding these same quality issues.

h) **Potential Commercial Partners and Acquirers**: Defendants' chronic supply failures, quality defects, and product misrepresentations rendered the Bower Hill brand unreliable and unscalable in the market, causing potential commercial partners and acquirers to decline engagement with the brand and preventing Plaintiffs from realizing the acquisition value that was the parties' stated shared commercial goal.

143. These acts were performed through improper means — including fraudulent product misrepresentations, unauthorized delegation of bottling obligations, deliberate supply subordination following the MGP acquisition, and chronic failure to perform contractual obligations — and were not justified by any legitimate competitive purpose.

144. As a direct and proximate result of Defendants' tortious interference, Plaintiffs lost specific named distributor accounts, retail chain placement, shelf space, and reorder cycles; suffered damage to their reputation as a reliable brand; lost the prospective distributor and retail relationships that supply failures prevented from being established; and lost the acquisition value and commercial partnership opportunities that Defendants' conduct destroyed.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

WHEREFORE, Plaintiffs respectfully request judgment against Defendants, jointly and severally, for: (a) compensatory damages for each lost relationship and opportunity; (b) punitive damages; (c) pre-judgment interest; (d) attorneys' fees and costs; and (e) such other relief as the Court deems just and proper.

### COUNT IX - DECLARATORY RELIEF
### *(Against All Defendants)*

145.    Plaintiffs re-allege and incorporate by reference all prior paragraphs.

146.    An actual and justiciable controversy exists between Plaintiffs and Luxco concerning the enforceability of the Promissory Note dated September 30, 2016 (the "Note") in the original principal amount of $1,091,482.00, and the Trademark Security Agreement of the same date (the "TSA"), which grants Luxco a security interest in the Bower Hill trademark, U.S. Reg. No. 4,682,762, and all associated goodwill, trade dress, domain names, and licensing agreements.

147.    Plaintiffs made Note payments totaling $1,018,836.19 — $744,441.31 in principal and $274,424.89 in interest — through at least November 2023. Plaintiffs' ability to continue servicing the Note was entirely dependent upon the supply of bourbon under the Supplier Agreement, which Defendants wrongfully terminated on September 12, 2023.

148.    On September 8, 2025, Luxco's counsel issued a default notice demanding Plaintiffs cure the default and threatening acceleration of all remaining principal and accrued interest.

149.    The Note and TSA are unenforceable for the following independent and alternative reasons:

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

a) **Fraudulent Inducement**. The Note and TSA were executed as part of a single, integrated transaction fraudulently induced by Defendants' misrepresentation that Bottler was a validly existing Missouri corporation and by other material misrepresentations described herein. The entire $1,000,000 Agreement is voidable and subject to rescission as a product of fraud.

b) **Failure of Consideration**. The Note was given as purchase consideration for the Bower Hill trademark, conditioned upon Defendants' performance of their supply obligations. Defendants' material and sustained breaches of those obligations — including the fraudulent product misrepresentations and the wrongful termination — constitute a failure of consideration that bars enforcement of the Note.

c) **Unclean Hands/Equitable Estoppel**. Defendants accepted $1,018,836.19 in Note payments while knowingly suppressing Plaintiffs' supply, misrepresenting the products supplied, and ultimately terminating the supply relationship with knowledge that Plaintiffs' default was the foreseeable result. Defendants cannot rely on a default that their own wrongful conduct proximately caused.

d) **Interdependency**. The Note and TSA cannot be enforced in isolation from the Supplier Agreement on which Plaintiffs' ability to perform depended. The wrongful termination of the Supplier Agreement was the direct cause of Plaintiffs' inability to satisfy the Note.

150. Unless restrained, Defendants will imminently exercise their purported rights under the TSA to foreclose upon or seek assignment of the Bower Hill trademark, causing irreparable harm that cannot be adequately compensated by money damages alone.

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

151.    An actual and justiciable controversy also exists between Plaintiffs Brown and Clang, individually, and Defendant Luxco, regarding the enforceability of the Guaranties of Payment each executed on September 30, 2016, guaranteeing all of Kra-ze's obligations under the Note. The Guaranties were executed as part of the single, integrated $1,000,000 Agreement; the fraud, failure of consideration, unclean hands, and interdependency grounds that vitiate the Note equally vitiate the Guaranties. Brown and Clang have suffered individual financial harm as guarantors and face personal liability that can only be resolved by a declaration that the Guaranties are unenforceable.

WHEREFORE, Plaintiffs respectfully request: (a) a declaration that the Promissory Note is unenforceable, void, or voidable; (b) a declaration that the TSA is unenforceable and that Luxco holds no valid security interest in the Bower Hill trademark; (c) a declaration that the Guaranties of Payment executed by Brown and Clang are unenforceable and that Brown and Clang have no personal liability thereunder; (d) preliminary and permanent injunctive relief restraining Luxco from taking any action to enforce the TSA, record any assignment of the Bower Hill trademark, or exercise any remedies under the Note pending final resolution; (e) an order directing cancellation or release of any lien recorded against the Bower Hill trademark with the USPTO; (f) attorneys' fees and costs; and (g) such other relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants, jointly and severally, as follows:

a)  Compensatory damages in an amount to be proven at trial;

b)  Punitive and exemplary damages for Defendants' fraudulent and intentional conduct;

c)   A declaration that the Promissory Note dated September 30, 2016, is unenforceable, void, or voidable by reason of fraudulent inducement, failure of consideration, material breach, and/or unclean hands;

d)   A declaration that the TSA dated September 30, 2016, is unenforceable and that Luxco holds no valid or enforceable security interest in the Bower Hill trademark, U.S. Reg. No. 4,682,762;

e)   A declaration that the Guaranties of Payment executed by Brown and Clang on September 30, 2016 are unenforceable, void, or voidable, and that Brown and Clang have no personal liability thereunder;

f)   Preliminary and permanent injunctive relief restraining Defendants from taking any action to enforce the TSA, record any assignment or transfer of the Bower Hill trademark, accelerate the Note, or exercise any remedies purportedly arising from any alleged Note default or Guaranty, pending final resolution of this action;

g)   An order directing the cancellation or release of any lien or security interest recorded against the Bower Hill trademark with the United States Patent and Trademark Office;

h)   A mandatory injunction requiring Defendants to immediately transfer GoDaddy registrant control of bowerhillbourbon.com and bowerhillwhiskey.com to Plaintiffs and restore all DNS records and web hosting configurations to their pre-seizure state;

i)   Restitution and disgorgement of all benefits wrongfully received by Defendants, including Note payments totaling no less than $1,018,836.19;

j)   Pre-judgment and post-judgment interest at the applicable Missouri statutory rate;

k)   Attorneys' fees and costs as authorized by applicable law; and

l)   Such other and further relief as this Court deems just and proper.

**48**

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

Electronically Filed - St Louis County - April 13, 2026 - 02:23 PM

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on all counts that are triable by a jury.

Respectfully submitted,                          MCINNES LAW LLC

                                    By:      /s/ Jack D. McInnes
                                          Jack D. McInnes, MO #56904
                                          Sean Henderson, MO # 78437
                                          1900 W. 75th Street, Suite 220
                                          Prairie Village, KS 66208
                                          (913) 220-2488 – Telephone
                                          (913) 347-7333 – Facsmile
                                          jack@mcinnes-law.com
                                          sean@mcinnes-law.com

                                          Attorneys for Plaintiffs